UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL LACURTIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:15-cv-00427-AGF |
| | ) | |
| EXPRESS MEDICAL TRANSPORTERS, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This putative class and collective action is before the Court on the parties' cross

motions for summary judgment.[1]   (Doc. Nos. 34 & 38.)   Plaintiff claims that Defendants

violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., and the

Missouri Minimum Wage Law, Mo. Rev. Stat. §§ 290.500, et seq., by failing to pay him

and similarly situated "paralift" van drivers overtime.

The parties' dispute arises over whether Plaintiff is a "covered" employee under §

306 of the Safe, Accountable, Flexible, Efficient Transportation Equity Act, Technical

Corrections Act ("TCA"), and thus eligible for overtime.   *See* Pub. L. No. 110–244, Title

III, § 306, 122 Stat. 1572, 1620 (2008).   The parties agree that if Plaintiff is a not a

"covered" employee, Plaintiff would be ineligible for overtime under the Motor Carrier

---

[1]     Plaintiff's motion seeks partial summary judgment as to liability only.   Plaintiff's
written motion requests findings of liability not only as to Plaintiff's claims but also as to
other drivers who are not yet parties to this litigation.   But at oral argument, Plaintiff's
counsel acknowledged that because no class or collective action has been certified in this
case, Plaintiff's motion applies only to his individual claims.

Act Exemption ("MCAE") to the FLSA.   *See* 29 U.S.C. § 213(b)(1).   Whether Plaintiff is "covered employee" under the TCA turns on whether the vans he operated were "designed or used" to transport more than eight passengers when the vans were modified to accommodate wheelchair placements.

The Court heard oral argument on these motions on January 22, 2016.   The parties subsequently submitted supplemental authority in support of their positions.   For the reasons set forth below, the Court finds, as a matter of law, that Plaintiff is a "covered employee" under the TCA and therefore eligible for overtime, and that Defendants' defenses to liability are without merit.   Accordingly, Defendants' motion will be denied, and Plaintiff's motion will be granted.

## BACKGROUND

For the purposes of the motion before the Court, the record establishes the following.   Defendant Express Medical Transporters, Inc. ("EMT") is a for-profit transportation services company that provides non-emergency medical and student transportation in several states through contracts with various governmental agencies and school districts.   EMT's gross annual sales exceeded $500,000 per year at all relevant times.   EMT is engaged in interstate commerce in several states company-wide and operates across state lines in two of its locations in Missouri and Arkansas (the "St. Louis" and "Ozarks" markets).   Defendant Hospital Shuttle Service, Inc. ("HSS") is a related entity that employs the drivers for EMT.

EMT provides two types of transportation services: "ambulatory," for people who

can walk, and "non-ambulatory," for people lying down or in a wheelchair.   EMT owns a fleet of vehicles and uses different vehicles depending on whether it is transporting ambulatory or non-ambulatory customers.   The vehicles used to transport non-ambulatory customers are called "paralift" vans, and are owned by EMT.   The paralift vans are modified Ford Econoline E-250 and E-350 vans, which were originally manufactured as 12-and 15-passenger vehicles, respectively, and which each have a gross vehicle weight of less than 10,000 pounds.   The vans were modified and converted into paralift vans by a separate, unrelated company, to accommodate two wheelchair positions, plus seating for the driver and one or more passengers.

EMT is licensed as a motor carrier by the United States Department of Transportation ("DOT") and is obligated to comply with the Federal Motor Carrier Safety Regulations of the DOT's Federal Motor Carrier Safety Administration.   The DOT conducts periodic compliance reviews of EMT's operations, the most of recent of which occurred in July 2011.   The review required inspection of "all passenger carrying vehicles designed to carry 9 or more passengers (including the driver)," and in connection with this requirement, the DOT inspected eight of EMT's paralift vans and found them to be satisfactory as to safety under the applicable regulations.

The drivers of EMT's paralift vans exclusively operate paralift vans, and provide customers with nonemergency transportation.   EMT and HSS have employed Plaintiff as a full-time driver since January 10, 2012, and Plaintiff has always operated paralift vans exclusively.

3

Attached as Exhibit E to Plaintiff's motion are photographs that accurately depict the type of paralift van that Plaintiff has operated during his employment with Defendants. The photographs in Exhibit E depict a paralift van that has been modified by removing seats to accommodate two wheelchair placements.   In addition to the two wheelchair placements, there is one fixed driver's seat, one fixed passenger seat, and one fold-down seat.   The stickers affixed on the door jamb of the paralift van depicted in Exhibit E state that the van has a gross vehicle weight rating of 8600 pounds and a total seating capacity of five.

Attached as Exhibit F to Plaintiff's motion are photographs of the only other type of paralift van that Plaintiff has operated during his employment.   These photographs also depict a paralift van that has been modified by removing seats to accommodate two wheelchair placements.   In addition to the two wheelchair placements, this paralift van has one fixed driver's seat and four additional fixed seats.   The stickers affixed on the doorjamb of the paralift van depicted in Exhibit F state that the van has a gross vehicle weight rating of 9500 pounds and a total seating capacity of six.[2]

Plaintiff has spent the vast and substantial majority of his time on a weekly basis operating paralift vans configured similarly to those depicted in Exhibits E and F. However, the parties dispute whether and to what extent *other* drivers employed by Defendants since 2012 have driven paralift vans with additional fold-down seats.

---

[2]     It is unclear how the seating capacity reflected in the door jamb stickers was calculated.

4

Defendants pay overtime to all drivers except paralift van drivers in the St. Louis and Ozarks markets, including Plaintiff, who transport passengers across state lines in interstate commerce.   Defendants classify paralift van drivers in the St. Louis and Ozarks markets as exempt from the FLSA's overtime pay requirements pursuant to the MCAE. During his entire employment, Plaintiff has typically worked an average of 50 hours a workweek, he has always been paid hourly, and he has never been paid overtime for hours worked in excess of 40 hours a week.

At all relevant times during his employment with Defendants, Plaintiff has served as a member of a pool of employee drivers who transport passengers across state lines in interstate commerce.   Plaintiff signed a "Driver Agreement" at the time of his employment, in which he acknowledged that he is a "member of a pool of employees who engages in interstate pickups and deliveries on a regular basis" and that in the "regular course of [his] employment, it is reasonable for [him] to expect to make interstate runs." (Doc. No. 36-1 at 12.)

On September 2, 2010, an investigator employed by the United States Department of Labor's ("DOL") Wage and Hour Division completed an FLSA compliance investigation of Defendants in response to a St. Louis paralift van driver's complaint that EMT was not paying overtime to paralift van drivers in the St. Louis market, in violation of the FLSA.   The investigation covered the time period of July 2008 to July 2010.   The investigator issued and signed a written "Compliance Action Report," concluding that the MCAE applied to the paralift drivers and mechanics that were the subject of the

investigation.   The investigator found that the paralift vans he inspected "are currently designed to transport more than 8 passengers for compensation," as required for the exemption, because:

> The modification to these vehicles was to add seats that could rise up and stay flat against the outside wall of the vans.   This allowed for more wheel-chair patients to be put in the vehicle.   However, the seats could also lie down and allow for seating of up to 10 persons in the van.

 (Doc. No. 36-1 at 16.)   The Compliance Action Report was not signed by the Administrator of the Wage and Hour Division.

The parties dispute whether the investigator inspected the same type of paralift vans operated by some of Defendants' employees during the time frame relevant to this case, 2012 to the present.   As an exhibit to their reply brief, Defendants submit the affidavit of paralift driver, Frederick Crook, who states that he has been employed by Defendants since 2009, and that the investigator inspected his paralift van during the 2010 investigation.   In his affidavit, Crook states that the "paralift vans used by Defendants in 2009 and 2010, at the time of the Wage & Hour Division's FLSA compliance investigation, were modified and configured in the same way as the paralift vans used in 2012" and that "[i]n fact, many of the same paralift vans were in Defendants' fleet in 2009-2010 and subsequently during the period of 2012-2015."   (Doc. No. 44-1.)   At oral argument, Defendants asserted that this affidavit establishes that some of the paralift vans operated by drivers in the St. Louis market from 2012 to the present have the same number of fold-down seats as the paralift vans inspected by the investigator in 2010.   However, Defendants admit that "the vast and

substantial majority of Plaintiff's time on a weekly basis has been spent operating paralift vans that are configured similarly to those depicted in Exhibits E and F," which do not have enough fold-down seats to allow for seating of more than eight persons.[3]

## ARGUMENTS OF THE PARTIES

Defendants argue that they are exempt from liability to Plaintiff for overtime pay under the MCAE.   In support of this argument, Defendants rely on the DOL investigator's written findings in the 2010 Compliance Action Report, as well as a DOT regulation issued under the authority of the National Traffic and Motor Vehicle Safety Act of 1966.   The DOT regulation, 49 C.F.R. § 571.3(b)(1), provides that "[f]or the sole purpose of determining the classification of any vehicle sold or introduced into interstate commerce for purposes that include carrying students to and from school or related events, any location in such vehicle intended for securement of an occupied wheelchair during vehicle operation shall be regarded as four designated seating positions."   Alternatively, Defendants argue that they are not liable for overtime pay under the FLSA's "good faith" defense, 29 U.S.C. § 259(a), because they relied in good faith on the 2010 Compliance Action Report.   Defendants also assert that Plaintiff's claims are barred by the doctrines of

---

[3]    After oral argument in this case, Defendants submitted a notice advising the Court that on April 7, 2016, the Missouri Department of Labor & Industrial Relations dismissed a complaint by one of Defendants' employees seeking unpaid overtime wages, concluding that the employee was exempt from receiving overtime under the MCAE.   But it is not apparent from the materials submitted by Defendants whether the employee was a paralift driver and, if so, what type of vehicle he or she drove.   Nothing in the materials submitted by Defendants suggests that the employee subject to the state investigation was a paralift driver who operated vans configured similarly to those depicted in Exhibits E and F.

collateral estoppel (as a result of the 2010 Compliance Action Report), waiver, and equitable estoppel.[4]

Plaintiff argues that the MCAE does not apply to him, and that he is entitled to overtime pay under the FLSA and the Missouri Minimum Wage law for all hours worked in excess of 40 hours per workweek as a matter of law.   Plaintiff relies primarily on the DOL's enforcement interpretation contained in Field Assistance Bulletin No. 2010-2, which states that, for purposes of the MCAE and the TCA's small vehicle exception thereto, the DOL's Wage and Hour Division will determine whether a vehicle is designed or used to transport more than eight passengers "based on the vehicle's current design and the vehicle capacity as found on the door jamb plate."   (Doc. No. 39-7 at 2.)   The Field Assistance Bulletin further provides that "[w]here a vehicle's seating capacity has been **reduced**, for example by removing seats to accommodate a wheelchair, [the DOL's Wage and Hour Division] will count the resulting seating capacity plus add 1 for each wheelchair placement."   *Id.*   Under this interpretation, Plaintiff argues that each wheelchair placement in the paralift vans he operates should be counted as one seat.   Therefore, Plaintiff argues that Defendants' paralift vans are designed and used to transport eight or fewer passengers, and as such, do not fall within the MCAE.

As to Defendant's assertion of a good-faith defense, based on its reliance on the DOL's 2010 FLSA compliance investigation, Plaintiff asserts that the defense is without

---

[4]    Defendants' waiver and estoppel defenses are based on Plaintiff's signature of an acknowledgement form stating that he was bound by the MCAE.

merit because (1) Defendant's overtime policies with respect to the St. Louis and Ozarks market predates the DOL's compliance investigation and therefore cannot have been made in reliance thereon; (2) the good-faith defense applies only to administrative orders and regulations, not to compliance investigations; and (3) the DOL's investigator inspected different vans than the paralift vans operated by Plaintiff.   Plaintiff also argues that Defendants' other defenses are without merit.

## DISCUSSION

"Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-movant, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law."   *Metro. Prop. & Cas. Ins. Co. v. Calvin*, 802 F.3d 933, 937 (8th Cir. 2015).   In opposing summary judgment, a party may not "simply point to allegations" in the pleadings, *Howard v. Columbia Public School District*, 363 F.3d 797, 800 (8th Cir. 2004), or "rest on the hope of discrediting the movant's evidence at trial," *Aylward v. Weiser (In re Citizens Loan & Savings Co.)*, 621 F.2d 911, 913 (8th Cir. 1980). Rather, the opposing party "must identify and provide evidence of specific facts creating a triable controversy."   *Howard*, 363 F.3d at 800 (citation omitted).

Under the FLSA, "[e]mployees engaged in interstate commerce" are to be paid "one and one-half times" their regular salary rates for all work performed in excess of 40 hours per week.   29 U.S.C. § 207(a)(1).   The Missouri Minimum Wage Law prescribes the same overtime pay requirement, to be interpreted "in accordance with" the FLSA, as amended, and any regulations promulgated thereunder.   Mo. Rev. Stat. §§ 290.505.1,

9

290.505.4.   The Missouri law goes on to state that its overtime-pay requirements "shall not apply" to employees exempt from overtime pay under the FLSA and any regulations promulgated thereunder.   Mo. Rev. Stat. § 290.505.3.

One such FLSA exemption is the MCAE, which states that the FLSA's overtime-pay provision does not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49."   29 U.S.C. § 213(b)(1). "The Secretary of Transportation may prescribe requirements for . . . qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier."   49 U.S.C. § 31502(b)(1).   A "motor carrier" is "a person providing motor vehicle transportation for compensation."   *See* 49 U.S.C. § 31501; 49 U.S.C. § 13102(14).

The parties agree that Defendants are joint employers of Plaintiff, and that Defendants are motor carriers for purposes of the MCAE.

However, in 2008, Congress enacted the TCA, Pub. L. No. 110–244, Title III, § 306 (2008), which established a "small vehicle exception" to the MCAE.   This small vehicle exception provides that the overtime provisions of § 207 of the FLSA apply to "covered employees," notwithstanding the MCAE.   As relevant here, a "covered employee" means an individual:

(1) who is employed by a motor carrier . . . ;

(2) whose work, in whole or in part, is defined—

10

(A) as that of a driver, driver's helper, loader, or mechanic; and

(B) as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce, except vehicles—

(i)     designed or used to transport more than 8 passengers (including the driver) for compensation; . . . and

(3) who performs duties on motor vehicles weighing 10,000 pounds or less.

Pub. L. No. 110–244, Title III, § 306.   In other words, the TCA's small vehicle exception provides that, notwithstanding the MCAE, motor carrier employees whose work "in whole or in part" is defined as a driver who operates motor vehicles (1) that weigh 10,000 pounds or less, (2) that operate on public highways in interstate commerce, and (3) that are designed or used to transport eight or fewer passengers (including the driver) for compensation, are entitled to overtime under the FLSA.

**<u>Plaintiff's Status as a Covered Employee</u>**

The parties do not dispute that Plaintiff is a motor carrier employee whose work in whole or in part is defined as a driver who operates motor vehicles that weigh 10,000 pounds or less on public highways in interstate commerce and that are used to transport passengers for compensation. Therefore, the only relevant question is whether the paralift vans Plaintiff operates are designed or used to transport more than eight passengers.   The parties' dispute centers on whether the wheelchair placements in the paralift vans should count as one or more seat placements, for purposes of determining how many passengers the vans are "designed or used" to transport.

The DOL considered this very question in its Field Assistance Bulletin No. 2010-2,

11

when it determined for its enforcement purposes, that it would use the following standard in interpreting the TCA's small vehicle exception:

> "Designed or used to transport more than 8" . . . – WHD will determine this information based on the vehicle's current design and the vehicle capacity as found on the door jamb plate. Where a vehicle's seating capacity has been **reduced**, for example by removing seats to accommodate a wheelchair, we will count the resulting seating capacity plus add 1 for each wheelchair placement. Where a vehicle's capacity has been **increased**, for example by bolting a bench seat into a cargo area, we will not count the added capacity unless the vehicle has been recertified by DOT for that purpose.

(Doc. No. 39-7 at 2.)

As Plaintiff correctly notes, the Eighth Circuit accorded "appropriate deference" to Field Assistance Bulletin 2010-2 in interpreting the small vehicle exception's vehicle weight requirement.   *McCall v. Disabled Am. Veterans*, 723 F.3d 962, 966 (8th Cir. 2013) ("In the Bulletin, the Department of Labor's Wage and Hour Division stated that it 'will continue to use the gross vehicle weight rating (GVWR) . . . to determine if a vehicle is one 'weighing 10,000 pounds' or less. . . . We accord appropriate deference to this interpretation of the FLSA by the Secretary of Labor.") (citing *Donovan v. Bereuter's, Inc.*, 704 F.2d 1034, 1036 (8th Cir. 1983)); *see also Perez v. Contingent Care, LLC*, No. 15-1074, 2016 WL 1376249, at *5 n.4 (8th Cir. Apr. 7, 2016) ("While not controlling upon the courts by reason of their authority, the rulings, interpretations and opinions of the Secretary do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.") (citation omitted).

Likewise, this Court accords some deference to the Secretary of Labor's

12

interpretation in Field Assistance Bulletin 2010-2, primarily because the interpretation comports with the plain language of the TCA.   There is no dispute that the paralift vans operated by Plaintiff, as shown in Exhibits E and F, are currently designed and used to transport a maximum of seven passengers (including the driver): five passengers (including the driver) seated in ordinary seats and two passengers seated in a wheelchair. The stickers affixed to the door jamb plates of these paralift vans also confirm that the seating capacity of the vans is less than eight.

Defendants assert that the Court should instead defer to a DOT regulation issued as part of the Federal Motor Vehicle Safety Standards for motor vehicles.   This regulation states, as part of the definition of "designated seating position," as that term is used in the section of the regulations governing federal motor vehicle safety standards, that:

> For the sole purpose of determining the classification of any vehicle sold or introduced into interstate commerce for purposes that include carrying students to and from school or related events, any location in such vehicle intended for securement of an occupied wheelchair during vehicle operation shall be regarded as four designated seating positions.

49 C.F.R. § 571.3(b).

Defendants assert that this regulation should govern, that the wheelchair positions in the paralift vans operated by Plaintiff should be regarded as four seating positions, and that, therefore, these paralift vans are "designed or used" to transport more than eight passengers, which would exempt Defendants from having to pay Plaintiff overtime.

Defendants contend that the Secretary of Transportation's interpretation, rather than the Secretary of Labor's interpretation, should control because Congress specifically

13

granted the DOT, not the DOL, the authority to define and interpret the MCAE.

Defendants cite the United States Supreme Court case, *Levinson v. Spector Motor Service*,

in which the Supreme Court held:

> Section 13(b)(1) of the Fair Labor Standards Act thus requires that we
> interpret the scope of [§] 204 of the Motor Carrier Act in accordance with the
> purposes of the Motor Carrier Act and the regulations issued pursuant to it. It
> is only to the extent that the Interstate Commerce Commission[5] does not
> have power to establish qualifications and maximum hours of service
> pursuant to said [§] 204, that the subsequent Fair Labor Standards Act has
> been made applicable or its Administrator has been given congressional
> authority to act.

*Levinson v. Spector Motor Serv.*, 330 U.S. 649, 677 (1947).

But the regulation Defendants rely on, 49 C.F.R. § 571.3, is part of the federal motor

vehicle safety standards issued under the authority of the National Traffic and Motor

Vehicle Safety Act, not the Motor Carrier Act.   *See* 49 C.F.R. § 571.1 (defining the scope

of the regulation).   Indeed, the National Traffic and Motor Vehicle Safety Act is

administered by the National Highway Traffic Safety Administration ("NHTSA"), a

separate body within the DOT than the body that administers the Motor Carrier Act, the

Motor Carrier Safety Administration ("MCSA").   And the regulations issued by the

NHTSA fall within an entirely different chapter of the DOT's regulations than the federal

motor carrier safety regulations interpreting the Motor Carrier Act.   Although the Court

may have accorded deference to the DOT's construction in 49 C.F.R. § 571.3 if the Court

were interpreting the statute under which that regulation were issued, the Court cannot see

---

[5]      Although the Interstate Commerce Commission no longer exists, the Secretary of
Transportation now has the power to establish the qualifications and maximum hours of
service pursuant to the Motor Carrier Act.   *See* 29 U.S.C. § 213(b)(1).

how the regulation is relevant to an entirely different statute that is administered by a separate regulatory body.   *See United States v. Mead Corp.*, 533 U.S. 218, 227-28 (2001) (noting that weight should be accorded to "an executive department's construction of a statutory scheme it is entrusted to administer").   In short, the Court does not find 49 C.F.R. § 571.3 persuasive in interpreting the MCAE or the TCA's small vehicle exception thereto.

Likewise, the Court does not defer to the DOL investigator's Compliance Action Report resulting from his 2010 compliance investigation, in interpreting the TCA's small vehicle exception.   The Compliance Action Report in this case said nothing about how many passengers a wheelchair placement is designed or used to accommodate.   Rather, the report discussed the status of drivers of operating vehicles with enough fold-down seats to seat 10 passengers.   There is no dispute that the paralift vans driven by Plaintiff for the vast majority of his employment were the paralift vans depicted in Exhibits E and F, which do not have such seating.   As such, the Compliance Action Report is irrelevant to Plaintiff's claims.   Plaintiff has established that he is a "covered employee" under the TCA as a matter of law.

**<u>Good-Faith Defense</u>**

As amended by the Portal–to–Portal Act of 1947, 29 U.S.C. § 251 et seq., the FLSA provides that "no employer shall be subject to any liability" for failing "to pay minimum wages or overtime compensation" if it demonstrates that the "act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation" of the Administrator of the DOL's

Wage and Hour Division, even when the guidance is later "modified or rescinded or is determined by judicial authority to be invalid or of no legal effect."   29 U.S.C. §§ 259(a)-(b).

"To invoke the defense in this case, [Defendants] must prove (1) [their] compensation policies were adopted in reliance on a written interpretation of the FLSA by the agency designated with such authority in the statute, (2) [their] policies were in conformity with that interpretation, and (3) [they] acted in good faith.   *Hultgren v. Cty. of Lancaster, Neb*., 913 F.2d 498, 507 (8th Cir. 1990).

"Regulations interpreting section 259 emphasize that Congress intended the defense to apply where guidance has been given by those who actually have the power to act as (rather than merely for) the agency."   *Id.* (citing 29 C.F.R. § 790.19).   "[A]n employer who relies on the statement of a lesser official is not relieved from liability unless the official's statement is in fact the interpretation of the agency."   *Id.* (finding that an opinion letter signed by Deputy Administrator of DOL's Wage and Hour Division was, in fact, interpretation of the agency, even if not signed by the Administrator).   Moreover, to satisfy § 259's requirements, "the agency's advice may not be oral and must be specific enough to provide guidance."   *Id.*

Here, the Court doubts whether the investigator who signed the 2010 Compliance Action Report had the power to act as, rather than merely for, the DOL's Wage and Hour Administrator.   Indeed, many courts to consider the issue have held that correspondence or reports by Wage and Hour investigators are not agency interpretations for purposes of §

16

259.  *See, e.g., Cusumano v. Maquipan Int'l, Inc*., 390 F. Supp. 2d 1216, 1222 (M.D. Fla.

2005) (finding that a facsimile response from a DOL Wage and Hour investigator that

included a summary of back wages owed was not a "written administrative regulation,

order, ruling, approval, or interpretation" from the Administrator for purposes of § 259 and

citing cases in support of the same); *McLaughlin v. Quan*, No. CIV.A. 87-A-423, 1988 WL

62595, at *3 (D. Colo. June 17, 1988) ("The cases are in accord that the failure of a DOL

agent to allege violations or make objections as a result of an investigation does not amount

to a written ruling or interpretation of the administrator upon which good faith reliance will

bar liability under 29 U.S.C. § 259.") (citing cases); *but see Mascol v. E & L Transp., Inc*.,

387 F. Supp. 2d 87, 100-01 (E.D.N.Y. 2005) ("Since the letter was issued by the Wage and

Hour Division as a result of a specific official investigation, even though it was not a

published formal statement, it qualifies as an official letter representing the position of the

Wage and Hour Division and so it must be a 'ruling' of an 'Agency' as contemplated by the

Portal Act.").

　　　　But even if the Compliance Action Report were in fact an interpretation of the

agency, the Court finds that Defendants did not act in conformity therewith.   "An

employer may well make an honest effort to become informed as to the precise

requirements of the Act, but will not be insulated from liability for unpaid wages unless its

actions actually conform to the agency's guidelines."   *Hultgren*, 913 F.2d at 508.   As

discussed above, the Compliance Action Report did not provide an answer to the question

in this case:   how many passengers is a wheelchair placement is designed or used to

accommodate?   Rather, the report determined that the particular paralift vans that the

investigator inspected were designed or used to transport more than eight passengers

because the fold-down seats added to accommodate wheelchairs "could also lie down and

allow for seating of up to 10 persons in the van."   (Doc. No. 36-1 at 16.)   There is no

dispute that the paralift vans driven by Plaintiff for the vast majority of his employment

during the relevant time period did not include enough fold-down seats to allow for seating

of up to 10 persons if all seats were unfolded.[6]   As such, the Court finds that Defendants

have failed to establish a good-faith defense under § 259 as a matter of law.   *See Hultgren*,

913 F.2d at 508 (holding that because there were "inconsistencies between the

circumstances described in the opinion letters and the actual circumstances" of the

employer's facilities, "regardless of whether [the employer] subjectively believed it was

complying with the letters, [the employer] in fact did not act in conformity with them");

*Regan v. City of Charleston, S.C.*, No. 2:13-CV-3046-PMD, 2015 WL 5331627, at *12

(D.S.C. Sept. 14, 2015) ("[T]he particular administrative ruling or interpretation actually

relied upon must provide a clear answer to the particular situation in order for the employer

to rely on it.") (citation omitted); *Bollinger v. Residential Capital, LLC*, 863 F. Supp. 2d

---

[6]      For the same reason, Defendants' collateral estoppel argument fails.   Even
assuming that Defendants could satisfy all of the other elements of collateral estoppel, the
2010 Compliance Action Report did not involve "the same issue" as the issue Defendants
seek to preclude here.   *See Turner v. U.S. Dep't of Justice*, No. 14-3678, 2016 WL
624960, at *3 (8th Cir. Feb. 17, 2016) (listing the elements of collateral estoppel).
Defendants' affirmative defenses of waiver and equitable estoppel, based on Plaintiff's
signed acknowledgement that he was bound by the MCAE, also fail as a matter of law.
*See, e.g., Copeland v. ABB, Inc*., 521 F.3d 1010, 1014 (8th Cir. 2008) ("It is well
established that FLSA rights are statutory and cannot be waived.").

1041, 1050 (W.D. Wash. 2012) ("An employer cannot act in conformity with Administrator guidance where the guidance does not clearly apply to the employer's circumstances.").

As the Court finds that Plaintiff is a "covered" employee entitled to overtime pay under the FLSA and the Missouri Minimum Wage Law, and that Defendants' defenses are without merit, the Court will grant Plaintiff's motion for partial summary judgment as to Defendants' liability and will deny Defendant's motion for summary judgment.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Plaintiff's motion for partial summary judgment is **GRANTED**.   (Doc. No. 38.)

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment is **DENIED**.   (Doc. No. 34.)

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 31st day of May, 2016.

19